IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD J. TYE,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary,<br>Department of Homeland Security,<br><br>      Defendant. | Case No. 03 C 5931<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Defendant Michael Chertoff[1], Secretary, Department of Homeland Security ("Defendant"), moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to plaintiff Ronald Tye's ("Tye" or "Plaintiff") one-count complaint alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"). Because Plaintiff has raised no genuine issue of material fact suggesting that Defendant's reasons for not promoting Plaintiff were pretextual, Defendant's motion is granted.

**Undisputed Facts**

The facts in this case are uncontested, unless specifically noted.[2] Tye was born on July 25,

---

[1] At the time plaintiff filed this case, Thomas J. Ridge was the Secretary of the Department of Homeland Security. During the pendency of this case, Michael Chertoff assumed the position of Secretary of the Department of Homeland Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Mr. Chertoff has been automatically substituted as the defendant in this case.

[2] Plaintiff filed a 56.1(b) statement of additional facts, but did not file a written response to defendant's 56.1 statement of uncontested material facts. Accordingly, defendant's facts are deemed admitted pursuant to Local Rule 56.1. *See also, F.T.C. v. Bay Area Business Counsel, Inc.*, 425 F.3d 627, 633 (7th Cir. 2005).

1949 and began working for the federal government in 1975. *Compl*. at ¶ 4. In 1987, Tye became a Special Agent, GS-13 with the Department of Treasury, U.S. Customs Service in Chicago, Illinois, which is now part of the Department of Homeland Security ("Department"). *Def.'s 56.1 Stmt*. ¶ 2. Tye remained in that position at all times relevant to this case. *Id*.

In February 2000, at the age of fifty, Tye applied to be a Group Supervisor, GS-14, within the U.S. Customs Service. *Def.'s 56.1 Stmt*. at ¶4. The application process for open group supervisor positions was governed by the Customs Automated Application Processing System ("CAAPS"). *Id*. at ¶ 6. Under CAAPS, each applicant was assigned a numerical score based on the information in their application. *Id*. at ¶ 7. Then, as group supervisor positions became available within the U.S. Customs Service, the applicants for those positions with the ten highest numerical scores were placed on a "competitive certificate" or "best-qualified" or "BQ" list. *Id*. at ¶¶ 8-9, Tye Dep. at 23-24. Defendant deemed each applicant on the BQ list for a specific position qualified for that position, and Tye admitted that the supervisor was free to choose any of the ten persons on the BQ list. *Def.'s 56.1 Stmt*. at ¶ 9, Tye Dep. at 27-28. The BQ list for each open position was forwarded to the person in charge of filling the vacancy (the "Selecting Officer"). *Id*. at ¶ 9. Under CAAPS, the Selecting Officer was free to choose any one of the ten individuals listed on the BQ list to fill the corresponding vacant position. *Id*. at ¶9.

In March 2000, Elissa A. Brown ("Brown") became the Special Agent in Charge ("SAC") for the Office of Investigations in Chicago. *Id*. at ¶ 11. For purposes of this motion, both parties agree that Brown was the selecting officer tasked with choosing the people to fill the two vacant group supervisor positions at issue in this case. Prior to being named SAC for the Office of Investigations in Chicago, Brown worked at the U.S. Customs Service Headquarters in Washington,

D.C. *Id*. at ¶ 11. Tye never worked at the Headquarters in D.C. *Id*. at ¶ 11. Tye also never worked with Brown and Brown never had any supervisory authority over him. *Id*. at ¶ 13.

Between the time Brown became SAC and when the promotions at issue in this case occurred, Brown and Tye only had one brief interaction. *Id*. at ¶ 15. That interaction occurred in Brown's office when Tye showed her a book of his professional accomplishments and expressed an interest in becoming a supervisor if the opportunity arose. *Id*. at ¶ 15.

In April 2000, Tye learned that his application for a group supervisor position generated a numerical score of 243 under the CAAPS process. *Id*. at ¶ 16. Two months later, Defendant created a BQ list for two vacant group supervisor positions. The first position was in the Financial Investigations Division in Chicago ("Chicago group supervisor position") and the second position was at O'Hare International Airport ("O'Hare group supervisor position"). *Id*. at ¶ 17. Based on his numerical score, Defendant ranked Tye second on the BQ list for the Chicago group supervisor position and first on the BQ list for the O'Hare group supervisor position. *Id*. at ¶ 17. U.S. Customs Agent Lindsey LaJoie, who was promoted to the Chicago group supervisor position, ranked fifth on the BQ list for that position with a numerical score of 232. *Id*. at ¶¶ 17, 20. U.S. Customs Agent Richard Fahy, who was promoted to the O'Hare group supervisor position, ranked seventh on the BQ list for that position with a numerical score of 228. *Id*. at ¶¶ 17, 20.

As SAC, Brown was tasked with recommending one candidate from each applicable BQ list to fill the vacant supervisory positions in Chicago and at O'Hare. *Id*. at ¶ 18. Brown recommended LaJoie and Fahy for the Chicago and O'Hare positions, respectively. *Id*. at ¶ 18. Brown forwarded

3

her recommendations to John Varrone, who made the ultimate promotion decision. *Id.* at ¶ 19.[3] Although Brown did not know the applicants' exact ages, she knew that Tye was older than LaJoie and Fahy. *Id.* at ¶ 21. Brown personally worked with LaJoie and Fahy prior to recommending them for the disputed supervisory positions and both had previous experience working at the Department's headquarters in Washington D.C. *Id.* at ¶¶ 24-25.

**Discussion**

To succeed on his motion for summary judgment, Defendant must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering this motion, the Court must construe all facts in the light most favorable to Tye and must view all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record, an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the

---

[3] As stated above, for purposes of this motion, both parties stipulate that Brown, not Varrone, made the *de facto* hiring decision. *Id.* at ¶ 19.

general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

To establish an age discrimination claim under the ADEA, a plaintiff must show that he would have received the promotion "but for" his employer's intentional age discrimination. 29 U.S.C. § 623; *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Tye concedes that he does not have any direct proof to support his discrimination claim and instead attempts to prove his claim using the indirect method recognized in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under the indirect method, in order to defeat Defendant's motion for summary judgment, Tye must establish a *prima facie* case of age discrimination. *Cerutti*, 349 F.3d at 1060. To meet this burden in the failure-to-promote context, he must show that: (1) he was a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was rejected for the promotion; and (4) a similarly situated employee outside of his protected class received the promotion. *Rabinovitz v. Pena*, 89 F.3d 482, 486 (7th Cir. 1996). If Tye establishes a *prima facie* case of discrimination, then the burden shifts to Defendant to state a legitimate, non-discriminatory reason for his actions, after which Tye must show that those reasons are merely a pretext for a discriminatory reason. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003).

### A. Tye's *Prima Facie* Case

Defendant concedes that Tye has established the first three elements of his *prima facie* case. However, Defendant argues that Tye was not similarly situated to LaJoie and Fahy because in contrast to Tye, both had prior working relationships with Brown and Brown was familiar with their career experience and proven performance. *Def.'s Mem*. at 9.

Tye has met the burden of showing a *prima facie* case of discrimination as he was similarly situated to the younger employees who received the promotions. Tye was on the BQ list for both the Chicago and O'Hare group supervisor positions, and Defendant concedes that each person placed on the BQ list for a specific position is considered to be qualified for that position. *Def. 56.1 Stmt.* at ¶ 9. The BQ list for each position contained the names of the 10 applicants with the highest scores from the CAAPS, and the selecting official could choose any of those ten persons. *Id.* at ¶ 7, 9. Accordingly, although Tye may not have possessed exactly the same qualities as the two employees who received the position, Tye was found to be one of ten people qualified for each of the positions, and was therefore similarly situated to LaJoie with respect to the Chicago position and Fahy with respect to the O'Hare position. Therefore, Plaintiff has established the elements of a *prima facie* age discrimination case.

### B. Pretext

Once Tye has created a *prima facie* case of discrimination, the burden shifts to Defendant to articulate a non-discriminatory reason for failing to promote Tye. *Rabinovitz*, 89 F.3d at 487. According to Defendant, Brown, the selecting officer, chose to promote LaJoie and Fahy over Tye because: (1) Tye had not worked at defendant's headquarters in Washington D.C.; (2) Brown had previously worked with both LaJoie and Fahy and knew of their performance in past positions; (3) Brown had not previously worked with Tye and was not familiar with his career experience; (4) Tye was not on her "radar"; and (5) Brown wanted LaJoie and Fahy for the open group supervisor positions. Each of these reasons are non-discriminatory, thus shifting the burden back to Plaintiff to produce evidence suggesting that Defendant's proffered reasons are merely a pretext for discrimination. *Cerutti*, 349 F.3d at 1061.

Pretext "means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). To show pretext, Tye "must do more than demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision." *Balderston*, 328 F.3d at 323. In a failure-to-promote claim, Plaintiff "must establish that her credentials were so superior to the credential of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Jordan v. City of Gary, Indiana*, 396 F.3d 825, 834 (7th Cir. 2005), *quoting Millbrook*, 280 F.3d at 1181. The Court's only concern in reviewing an employer's reasons for not promoting Plaintiff is the honesty of the employer's beliefs. *Balderston*, 328 F.3d at 323. Employers, not this Court, are entitled to define the core qualifications for a position, so long as the criteria utilized by the companies are not discriminatory in nature. *Cerutti*, 349 F.3d at 1064-65. This court is not "a super-personnel department that reexamines an entity's business decisions." *Balderston*, 328 F.3d at 324 (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986).

Tye makes two types of arguments in support of his contention that Defendant's proffered reasons for not promoting him are a pretext for discrimination. First, Tye argues that Defendant has an unwritten policy to promote individuals under the age of forty, making Brown's decision to hire Fahy and LaJoie on the basis of their other skills and prior experience a pretext for a decision to hire persons under the age of forty. Second, Tye argues that Brown's statements during the course of the EEOC investigation and this litigation are inconsistent, implying that Brown's motives for her decision are dishonest and pretextual.

### 1. The Unwritten Policy at the Department

In support of Tye's position that the Department has an unwritten policy of promoting individuals under the age of forty, Tye relies upon a self-serving statement from one of his former colleagues and a two-page list of Department employees. *Pltf. 56.1 Stmt. Exs. N & Q.* Neither of these documents permit denial of summary judgment. The statement from Tye's former colleague is an unsworn statement not permissible under Fed. R. Civ. P. 56(e), and the testimony would be largely inadmissible at trial because it contains information not based on personal knowledge and contains speculative conclusions. *See* Fed. R. Evid. 602; *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). If such inadmissible statements could defeat summary judgment, "[d]iscrimination law would be unmanageable [because] disgruntled employees-the friends of the plaintiff and often people in the same legal position as the plaintiff-could defeat summary judgment by affidavits speculating about the defendant's motives." *Visser*, 924 F.2d at 659.

The two-page list of Department employees is similarly insufficient as a basis for denying summary judgment. The two-page list purportedly includes the names and ages of people who were promoted to supervisory positions within the Department from 1998 to 2004. *See Pltf. 56.1 at Ex. Q.* The chart would be inadmissible at trial as the record contains no evidence as to how this summary chart was created, or whether it is a business record of the Department. *See* Fed. R. Evid. 802, 803(6). Even if the chart were admissible, however, it is not clear what conclusion Plaintiff seeks to draw from this chart. The list contains a column for "date" and a column for date-of-birth. If "date" is the date of promotion, then the ages for each of the person do not match the ages listed in Plaintiff's statement of material facts (which ages purportedly rely on this chart); in addition, if the "date" is the date of promotion then over half of the persons listed on the chart were over the age

of forty at the time they were promoted, contradicting Plaintiff's theory that the chart provides evidence of pervasive discrimination.

Additionally, in order to rely on statistical evidence to support an inference of discrimination, a plaintiff in Tye's position "must subject all of the employer's decisions to statistical analysis to find out whether [age] makes a difference." *Millbrook,* 280 F.3d at 1177 (quoting *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996)). A two-page list of names and ages, without a statistical analysis of each of the hiring criteria considered by defendant in making the supervisory promotion decisions, cannot defeat summary judgment.[4] Accordingly, the Court finds that neither the statement by Tye's former colleague, nor the two-page list with names of Department employees, support Tye's argument that Defendant had an unwritten policy to only promote employees under the age of forty to supervisory positions.[5]

### 2. Inconsistent Statements by SAC Brown

Tye's second argument is that Brown's explanations for the decision to promote LaJoie and Fahy instead of Tye are both internally inconsistent and inconsistent with the testimony of other Department personnel. Tye cites to what he contends are inconsistencies in Department personnel's proffered non-discriminatory reasons for passing him over for the disputed promotions, but the

---

[4] Tye's request for leave to conduct a statistical analysis is denied. Tye made this request after defendant's motion for summary judgment was fully briefed and after discovery in this case had been extended by more than six months. The request is untimely and will not be allowed.

[5] Without providing a supporting citation to the record, plaintiff also asserts that defendant "has admitted that every candidate under the age of 50 that was identified on the certified best qualified list on June 19, 2000 and June 20, 2000, has been promoted with the exception of plaintiff." *Pltf. Resp.* at 7. Because plaintiff has failed to include this fact in his statement of additional facts, the Court will disregard it. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

9

record does not support Tye's contention that these statements are internally inconsistent, nor does the record support that Brown's non-discriminatory explanations altered over the course of the investigation.

First, Tye argues that Brown's testimony at an administrative hearing in 2003 contradicts the language in two letters she drafted in 2000 an her affidavit from 2001. *See Def. 56.1 Stmt., Admin. Tr.; Pltf. 56.1 Exs. I & J (letters), Ex. K (affidavit).* Specifically, Tye argues that Brown stated in the 2000 letters and the 2001 affidavit that she reviewed the credentials of all ten candidates on the BQ lists for both disputed positions before selecting LaJoie and Fahy, but that at the administrative hearing in 2003 she testified that she did not consider Tye's credentials or experience when she decided to hire LaJoie and Fahy. *Pltf. Resp.* at 6-7. Contrary to Tye's argument and consistent with Brown's testimony at the 2003 administrative hearing, the 2000 letters do not state that she "considered and compared the packages of the ten applicants, and after the comparison determined that LaJoie and Fahy were the most qualified in the group." The 2000 letters address the reasons Brown chose the other candidates and not to the review process, not Brown's personal review process for the ten candidates. Likewise, the statements in the 2001 affidavit are consistent with the 2003 testimony, as the 2001 affidavit discusses the basis for her decision to choose the candidates she chose, and her relationship with other members of the Department. Accordingly, the relationship between Brown's 2003 testimony and her prior written testimony and records do not support a finding of pretext.

Next, Tye contends that Brown falsely stated that in her 2001 affidavit that she consulted with Lee Wattenbarger and James Zegel before recommending LaJoie and Fahy for the disputed promotions. *See Pltf. 56.1 Stmt. Ex. K.* Brown stated in her affidavit that she consulted with

Wattenbarger and Zegel regarding promoting Fahy (not regarding LaJoie, as Plaintiff contends); however, the statements of Wattenbarger and Zegel do not contradict Brown's affidavit. *See id.* at Pg. 2 (Brown 2001 Aff.); *Exs. L & M*. In Wattenbarger's declaration, he stated in response to affidavit questions about whether he made the recommendation for selection of candidates other than Plaintiff that he was not part of the selection process that resulted in the promotions of LaJoie and Fahy. *See Pltf. 56.1 Stmt. Ex. L.* Similarly, in Zegel's statement, he testified that he was not the selecting official or the recommending official, and also testified that Brown had asked his opinion of several different employees. *See Pltf. 56.1 Stmt. Ex. M.* These statements are not contradictions of Brown's affidavit testimony that she discussed the different candidates with Wattenbarger and Zegel but made the recommendations to promote LaJoie and Fahy herself.

Finally, Tye argues that John Varrone directly contradicted Brown's statement regarding the benefit of having past work experience at the Department's headquarters. *Pltf. Resp.* at 7-8. Again, Tye mischaracterizes the evidence in the record. At his deposition, Mr. Varrone stated that a lack of headquarters experience was not necessarily an impediment to being promoted to a group supervisor position within the Department. Varrone Dep., *Pltf. Ex. R.* at 45. However, Varrone's opinion does not contradict Brown's statement that she believed on the basis of her knowledge that LaJoie and Fahy's personal headquarters experience would be beneficial for the specific supervisory positions to which they were promoted. Additionally, Varrone testified that he deferred to Brown's decision as to which people had the best skill sets to fill a given supervisory vacancy.

Plaintiff relies upon *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003), for the position that any inference of untruthfulness by the employer precludes summary judgment. *Pltf. Resp.* at 7. But the employer in *Zaccagnini* gave different non-discriminatory

11

reasons throughout the course of the litigation, including one in the summary judgment reply brief, creating an inference that the employer was obscuring the real reason for terminating the plaintiff. *See Zaccagnini*, 338 F.3d at 677-78. In the case before the Court, not only are the statements not inconsistent in the ways suggested by Tye, but Brown's non-discriminatory reason for failing to promote Tye has remained the same throughout every document presented: she knew and valued the skills and past work experience of LaJoie and Fahy, which experience and past relationship Tye did not have.

Finally, there is no evidence that Tye was so much more qualified than LaJoie and Fahy that discrimination is the likely reason Tye was not promoted. *See Rabinovitz*, 89 F.3d at 487 (7th Cir. 1996) (requiring evidence that the candidate was so much more qualified that discrimination likely entered the decision-making process in order to find evidence of pretext); *Jordan*, 396 F.3d at 834. The only evidence presented is that Tye received a higher score on the CAAPS system, but the record reflects and Tye relies upon the Department policy that the top ten candidates were considered equally qualified for the position. The evidence in the record supports a finding that Brown promoted LaJoie and Fahy over Tye because all three were eligible for promotion, she had worked directly with LaJoie and Fahy in the past, and both had previous headquarters experience.

**Conclusion**

Accordingly, the Court finds that there are no genuine issues of material fact and Defendant has demonstrated that he is entitled to judgment as a matter of law. There is no evidence that Defendant's non-discriminatory reasons for failing to promote Tye are merely a pretext for unlawful age discrimination. Therefore, the Court grants summary judgment in favor of Defendant. So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 29, 2006